# IN THE COURT OF APPEALS OF IOWA

No. 18-1249
Filed January 23, 2019

**IN THE INTEREST OF K.C. and S.M.,**
**Minor Children,**

**R.M., Father of S.M.,**
        Appellant,

**A.C., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block,

District Associate Judge.

A mother and father separately appeal the termination of their parental

rights. **AFFIRMED ON BOTH APPEALS.**

Christina M. Shriver, Waterloo, for appellant father.

Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, for appellant

mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

Melissa A. Anderson-Seeber of Juvenile Public Defender's Office,

Waterloo, guardian ad litem for minor children.

Considered by Tabor, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

A mother, A.C., and a father separately appeal from the termination of their parental rights. Because grounds for termination exist and termination of the parents' parental rights is in the children's best interests, we affirm on both appeals.

## I.    Background Facts and Proceedings

K.C. was born to A.C. in February 2016.[1]  K.C.'s father is unknown.[2]  The mother and R.M. were living together with K.C. in February 2017, when the family came to the attention of the department of human services (DHS). On February 17, K.C. was transported by ambulance to the hospital, diagnosed with shaken baby syndrome, and placed in a medically induced coma. The child suffered extensive injuries while in R.M.'s sole care. R.M. stated the child fell off the couch. Medical staff determined the explanation given concerning the injuries sustained by K.C. was not plausible, and it was determined the injuries were a result of abusive head trauma involving severe shaking.[3]  A child-abuse assessment

---

[1] The mother has an older child who had been adopted by a foster parent and is living in Minnesota.

[2] The unknown father's rights were also terminated.

[3] The juvenile court described the child's condition upon arrival at the hospital:

> The child was observed to have sustained a subdural hematoma to the left side of his brain, bruising to his left eye and forehead and suffered retinal hemorrhages in all layers of both eyes. The child was flown to the University of Iowa Hospitals and Clinics where he underwent emergency surgery and a piece of his skull was removed due to the swelling in his brain. The child was placed in a medically induced coma. He had experienced nearly [eighteen] seizures within ninety minutes upon arrival at University of Iowa Hospitals and Clinics. There was no movement on the right side of his body.

Because of the nature and severity of K.C.'s injuries, medical personnel did not believe the child's head injuries to be non-accidental. DHS determined R.M. was the cause of the child's injuries. A criminal investigation is ongoing.

conducted by DHS resulted in a finding that R.M. was responsible for physical abuse of K.C. resulting in serious injury.[4]  The child remained hospitalized for several weeks and was discharged to a residential rehabilitation facility for children.  K.C. remained at the facility until August 29, 2018, when he was moved to family foster care.

The mother was pregnant with R.M.'s child at the time of K.C.'s injuries and did not believe R.M. had injured K.C.  DHS expressed concerns about her choosing to stay with R.M., but she continued to live with him.[5]  A.C.'s and R.M.'s child, S.M., was born prematurely in July 2017.  The infant was removed from the parents' custody shortly after birth.

R.M. does not acknowledge any responsibility for K.C.'s injuries, and the mother does not believe R.M. had any involvement.  The children have remained in foster care placements since their respective removals, where they are doing well.  The foster families have indicated their willingness to offer permanency to the children.

A termination-of-parental-rights hearing was held on May 1, 2018.  On July 9, the juvenile court terminated the mother's rights to K.C. and S.M. pursuant to

---

At the termination hearing, K.C.'s foster mother testified K.C. was developmentally delayed, blind, had right-sided body weakness, and currently required tube feeding three times per day (each "[t]akes an hour and a half to two hours"), but was learning to eat foods.  The child required "around-the-clock care."

[4] During the investigation, the child-abuse investigator called Minnesota social services and learned the mother had "child welfare" cases there, meaning cases had been opened upon a report of a safety concern or neglect.  Concerns included a burn on A.C.'s older child, domestic violence, and the mother's mental health.  The mother and R.M. were not in a relationship at the time of the report.

[5] A psychological assessment of the mother in July 2017 noted the mother's difficulty with placing her child's welfare before her desire for a relationship with R.M. was "problematic and consistent with her personality profile."

Iowa Code section 232.116(1)(d) and (h) (2018). R.M.'s parental rights to S.M. were terminated pursuant to section 232.116(1)(d) and (h). Both parents appeal.

## II.   Standard of Review

Our review of termination proceedings is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014) (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). The appellate court "will uphold an order terminating parental rights if there is clear and convincing evidence" of a ground for termination under Iowa Code section 232.116(1). *D.W.*, 791 N.W.2d at 706.

### A.   Father's Appeal

The father asserts the State failed to make reasonable efforts to reunify him with S.M. He argues DHS cited the unexplained injuries to K.C. as the barrier to reunification with S.M., which he complains is unreasonable because he has never been charged with any crime related to the injuries to K.C. and "has remained steadfast in his denial that he is in some way responsible for the injuries."

The code requires DHS to exert reasonable efforts to return children to their home—consistent with the children's best interests. Iowa Code § 232.102(6)(b). "Reasonable efforts" include services offered to eliminate the need for removal or to make it possible for the children to safely return to the family home. *Id.* The duty to make reasonable efforts is not "a strict substantive requirement of termination," but the extent of the measures taken by DHS "impacts the burden of proving those elements of termination which require reunification efforts." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

Although DHS is required to make reasonable efforts, "[i]n general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *In re L.M.*, 904 N.W.2d 835, 840 (Iowa 2017). Here, the father did not raise the issue of reasonable efforts in the juvenile court.[6]

In any event, while the father has not acknowledged responsibility for K.C.'s injuries, it is clear that K.C. suffered severe and debilitating injuries while in R.M.'s sole care. Medical personnel concluded the child's injuries could not have resulted from him falling off a sofa, as explained by the father, but were a result of non-accidental trauma. A child-abuse assessment found R.M. had physically abused K.C. While "[t]he State may not require parents to admit guilt," the State "may require parents to otherwise undergo treatment." *In re C.H.*, 652 N.W.2d 144, 150 (Iowa 2002).

R.M. notes he has attended parenting classes. However, neither R.M. nor A.C. indicated in the parenting classes the nature or extent of K.C.'s physical condition. The education coordinator noted in an April 11, 2018 report:

> The . . . child was present at the court hearing and staff was shocked at the significance of his developmental delays and to hear of the extent of his injuries. During the time that the parent was involved in parent education sessions, he did not indicate that the injuries and consequences of such injuries were this severe.

---

[6] We observe that numerous services were offered to the parents, which the juvenile court found had not been utilized fully by the parents, including child-welfare services such as therapy and skill developmental services, supervised visitation, random drug testing, transportation assistance, individual mental-health counseling, mental-health evaluations, area education services, family team meetings, parent education programming, and other community-based services.

Parenting education or other services may be futile if a person refuses to acknowledge the need for relevant treatment. *See id.* For example, our supreme court has observed that where parents refused to acknowledge or minimized the presence of domestic violence in their relationship, the fact that the parents put their needs before those of the child created a barrier to reunification. *In re L.H.*, 904 N.W.2d 145, 153 (Iowa 2017) ("The State's clear and convincing evidence also shows that [the parents] continue in their refusal to cooperate with DHS to develop the parenting skills necessary to parent [the child] safely. They both continue to minimize and/or deny the presence of domestic violence in their relationship. An important aspect of a parent's care for his or her child is to address his or her role in the abuse of the child.").

Here, R.M.'s failure to address his role in K.C.'s injuries is a barrier to reunification with S.M. *See C.H.*, 652 N.W.2d at 150–51 (noting that a "parent's failure to address his or her role in the abuse may hurt the parents' chances of regaining custody and care of their children"). DHS determined the father's acknowledgement was required in order for DHS to provide adequate services. While R.M. has participated in parenting classes, the specific concerns about abuse of children and reasonable expectations of children's capabilities have not been and cannot be addressed without some indication the parents understand their role in injury to the child. Under these circumstances, we will not find DHS failed to make reasonable efforts.

The father also contests that grounds for termination exist under Iowa Code section 232.116(1)(d). However, he does not contest the existence of grounds for

termination under section 232.116(1)(h).[7]  *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."); *P.L.*, 778 N.W.2d at 40 (noting the first step in our analysis is to determine if a ground for termination exists and because the parent did not dispute existence of grounds, "we do not discuss this step").

B.    Mother's Appeal

The mother contends there is not clear and convincing evidence to support termination under section 232.116(1)(d) or (h).  We consider section 232.116(1)(h). There is no doubt that S.M. and K.C. are under three years of age, have been adjudicated children in need of assistance, and have been out of her custody for the statutory period.  *See* Iowa Code § 232.116(1)(h)(1)–(3).

The mother asserts there is not clear and convincing evidence the children cannot be returned to her at present or in the foreseeable future.  *See id.* § 232.116(1)(h)(4).  As discussed above, the risk of physical abuse to the children remains because neither the mother nor R.B. is willing or able to acknowledge there is a risk at all.  The mother has chosen to remain with R.M. despite the

---

[7] Under section 232.116(1)(h), a court may terminate parental rights if all of the following are shown:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

permanent injuries K.C. has suffered—injuries medical personnel concluded could not have occurred in the absence of non-accidental trauma. Because the children cannot be returned to the mother at present, we find clear and convincing evidence to support termination of parental rights under section 232.116(1)(h).

The mother asserts that termination of her parental rights is not in the children's best interests. When considering the best interests of the child, we primarily consider the child's safety; opportunity for growth; and the physical, mental, and emotional needs. *See* Iowa Code § 232.116(2). Insight for the determination of the child's long-range best interests can be gleaned from "evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing." *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

> The juvenile court found:

> [A.C.] and [R.M.] have participated in many of the services being offered as a couple. [R.M.] has been prohibited from having any contact with the child, [K.C.], by the court. [A.C.] and [R.M.] have consistently attended visitation with the child, [S.M.] Visitations with [K.C.] has been more inconsistent. [K.C.] has some form of therapy at least two times per week. [A.C.] has not attended any of [K.C.'s] therapy appointments. [A.C.] has also missed numerous doctor appointments of [K.C.] [A.C.] just learned the week prior to the hearing on termination of parental rights how [to] change [K.C.'s] g-tube. Both parents have been observed to be sleeping during visitations. During joint visitation, [A.C.] has noticeably interacted more with [S.M.] than [K.C.] [A.C.] does not believe that [R.M.] is responsible for the injuries sustained by [K.C.] and has no reservations regarding the contact between [R.M.] and children. [A.C.] did not actively engage in individual therapy until February, 2018, despite being ordered to participate in individual counseling at time of the disposition hearing on August 3, 2017.

We give weight to these findings of the juvenile court. Of greatest concern is the mother's unwillingness to even consider that R.M. had any part in K.C.'s

injuries. The mother did not feel she was capable of parenting without R.M. and has prioritized her relationship with him over her relationship with her children. We agree with the juvenile court that "[b]ecause of the children's ages, the parents' failure to actively participate in services being offered, history of physical abuse, lack of supervision and denial of critical care," termination of parental rights is in the children's best interests.

The mother also contends that the closeness of her bond with the children should preclude termination of her parental rights. *See* Iowa Code § 232.116(3)(c). She has placed her relationship with R.M. over her desire to parent her children and have them returned to her care. The mother-child bond does not preclude termination of her parental rights.

**AFFIRMED ON BOTH APPEALS.**